# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA FRISON,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>ACCREDITED HOME LENDERS, INC.;<br>OCEANFRONT MORTGAGE, INC.;<br>COUNTRYWIDE HOME LOANS, INC.;<br>FIDELITY NATIONAL TITLE<br>COMPANY; THE BANK OF NEW<br>YORK in trust for registered Holders of<br>CWABS, Inc. Asset-Backed Certificates,<br>Series 2006-BC5; all other claimants of<br>whatsoever kind and character against real<br>property commonly known as 435<br>Ringwood Drive, San Diego, CA, APN<br>583-704-04-00; and DOES 1 through 100,<br>inclusive,<br><br>　　　　　　　　　　Defendants. | CASE NO. 10-CV-777-JM (WVG)<br><br>**ORDER GRANTING DEFENDANT OCEANFRONT MORTGAGE, INC.'S MOTION TO DISMISS, AND GRANTING AND PART AND DENYING IN PART DEFENDANT COUNTRYWIDE HOME LOANS, INC.'S MOTION TO DISMISS**<br><br>Doc. Nos. 44 & 46 |

　　　Plaintiff Viola Frison brings the current action based on a loan obtained through a refinancing of her home and the subsequent foreclosure proceeding initiated against it. Plaintiff's Second Amended Complaint ("SAC") asserts ten causes of action: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*; (2) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*; (3) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*; (4) violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), CAL. CIV. CODE §§ 1788 *et seq.*;

(5) violation of California's unfair competition law, CAL. BUS. & PROF. CODE § 17200 ("§ 17200"); (6) breach of fiduciary duty; (7) negligent misrepresentation; (8) fraud; (9) quasi-contract; and (10) a determination invalidating the lien. (Doc. No. 43.) Defendants Countrywide Home Loans, Inc. ("Countrywide") and Oceanfront Mortgage, Inc. ("Oceanfront") now bring two separate motions to dismiss certain of the claims against them. (Doc. Nos. 44 & 46.)

Pursuant to CivLR 7.1(d)(1), the court determines this matter is appropriate for resolution without oral argument. For the reasons set forth below, the court hereby GRANTS Oceanfront's motion to dismiss, and GRANTS IN PART and DENIES IN PART Countrywide's motion to dismiss.

**I.    BACKGROUND**

Plaintiff is an individual and the alleged owner of a parcel of real property located at 435 Ringwood Drive, San Diego, CA. (SAC ¶ 1.) Plaintiff alleges that on or around February 24, 2006, she applied for and obtained a loan secured by her real property "[a]t the request of" Defendants Accredited Home Lenders, Inc. ("Accredited"), Oceanfront, "and others." (Id. ¶ 16.) Although the SAC does not specify the role that each defendant played in the transaction, Oceanfront presumably acted as broker in helping Plaintiff obtain the loan from Accredited. (Id. ¶ 2-3.) Defendants Countrywide and The Bank of New York in trust for registered Holders of CWABS, Inc., Asset-Backed Certificates, Series 2006-BC5 ("Bank of New York") appear to have subsequently acquired interests in the loan and/or taken over its servicing.[1] (Id. ¶¶ 4 & 34.)

According to the SAC, Oceanfront and Accredited made "certain representations regarding the LOAN" to Plaintiff that were inaccurate, including statements regarding the favorability of the loan terms generally, Plaintiff's ability to subsequently refinance the loan to reduce monthly payments, the size of the interest rate and required payments on the loan,

---

[1] An additional defendant, Fidelity National Title Company ("Fidelity"), has since been dismissed from the case without prejudice. (Doc. No. 47.) Fidelity's role in this case is not clear from the complaint, which merely alleges that Fidelity "perform[ed] certain tasks related to origination of the LOAN." (SAC ¶ 41)

1  the amount of equity in Plaintiff's property, the amount of money available to Plaintiff, the
2  adjustability of the interest rate, and the absence of a balloon payment. (Id. ¶¶ 17-18.) As a
3  result of these representations, Plaintiff was "convinced" by Oceanfront and Accredited to
4  refinance her property. (Id. ¶ 17(d).) According to Plaintiff, the loan documents she was
5  provided with were "complicated and misleading to the average consumer," and their material
6  terms were not explained to her prior to signing. (Id. ¶¶ 24(e) & (h).) Nevertheless, Plaintiff
7  signed the loan documents because she was "rushed through" the process and not given time
8  to properly read and review the papers before agreeing to their terms. (Id. ¶ 24(d).)

9        Plaintiff claims that the loan proceeds she received afterwards were less than the
10 amount she was promised (id. ¶ 17(l)) and that her payments on the mortgage were higher than
11 Oceanfront and Accredited had told her they would be (id. ¶ 18(b)). Plaintiff also claims that
12 Oceanfront and Accredited failed to disclose key information to her prior to or at the close of
13 the transaction (id. ¶ 19) and did not provide her with copies of the loan documents she signed
14 (id. ¶ 24(f)). In addition, Plaintiff alleges that her initials and signature on the loan application
15 were forged. (Id. ¶ 17(f)-(k).)

16       After Plaintiff obtained financing, the loan "subsequently became unaffordable" and
17 foreclosure proceedings were initiated against her. (Id. ¶¶ 18(g), 27(b).) Plaintiff received a
18 Notice to Quit the property on January 23, 2009; however that foreclosure was subsequently
19 halted. (Id. ¶¶ 27(b), 78(d).) According to Plaintiff, following this attempted foreclosure, she
20 submitted a written request for information regarding her loan to Countrywide on or around
21 April 3, 2009. (Id. ¶ 46.) Plaintiff did not receive a response to her request. (Id. ¶ 51.)

22       Plaintiff filed her original complaint in state court on March 2, 2010. (Doc. No. 1.)
23 Defendant Countrywide subsequently removed the action to federal court, citing federal
24 question jurisdiction. (Id.) Countrywide and Oceanfront each then filed motions to dismiss
25 (Doc. Nos. 8 & 9), both of which were granted by the court with leave to amend (Doc. No. 18).
26 Plaintiff timely filed her First Amended Complaint ("FAC") (Doc. No. 20), and Countrywide
27 and Oceanfront once again filed motions to dismiss (Doc. Nos. 24 & 25). The court then
28 granted Oceanfront's motion in full and granted Defendant Countrywide's motion in part,

1  dismissing all claims except Plaintiff's causes of action for violation of RESPA and violation
2  of California's unfair competition law as to Countrywide only. (Doc. No. 33.) Leave to amend
3  was once again granted. (Id.) Plaintiff filed her SAC on November 12, 2010, re-alleging many
4  of the same causes of action and adding Bank of New York as a defendant. (SAC.)
5  Countrywide and Oceanfront now bring motions to dismiss the SAC. (Doc. Nos. 44 & 46.)

## II.  LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) challenges the legal sufficiency of the pleadings. De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978). In evaluating the motion, the court must construe the pleadings in the light most favorable to the non-moving party, accepting as true all material allegations in the complaint and any reasonable inferences drawn therefrom. See, e.g., Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003). While Rule 12(b)(6) dismissal is proper only in "extraordinary" cases, United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The court should grant 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

## III.  DISCUSSION

### A.  Oceanfront

The second, fifth, sixth, seventh, eighth, ninth, and tenth causes of action in Plaintiff's SAC are brought against Defendant Oceanfront. Oceanfront moves to dismiss all seven claims. (Doc. No. 46.)

#### 1) Claim Nos. 2, 5, 6, 7 & 8 (TILA, § 17200, breach of fiduciary duty, negligent misrepresentation & fraud)

Oceanfront claims that Plaintiff's second, fifth, sixth, seventh and eighth causes of action—for violations of TILA and § 17200, breach of fiduciary duty, negligent misrepresentation, and fraud, respectively—are each time-barred under their respective statutes of limitations. (Doc. No. 46-1 p.3.) In addition, Oceanfront contends that tolling of these

1  statutes of limitations is not justified by either equitable estoppel or equitable tolling. (Id. at
2  p.7.) This court previously held that each of these claims was untimely on its face as to
3  Oceanfront, as each related to events occurring on or before February 24, 2006, the date on
4  which Plaintiff signed the loan agreement. (Doc. No. 33 pp. 7, 11-13, 15.) Therefore, the only
5  question to be addressed with regard to the statute of limitations on this motion is whether
6  Plaintiff has pled facts in her SAC sufficient to justify tolling.
7       As this court previously explained, equitable estoppel and equitable tolling

> are two related but distinct doctrines. . . . [E]quitable estoppel[] "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit, whereas equitable tolling focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant.

11 (Doc. No. 33 p.7.) Here, Plaintiff alleges that both doctrines are applicable. (SAC ¶¶ 22-24.)
12       With regard to equitable estoppel, Plaintiff claims that Oceanfront, along with
13 Accredited, undertook certain "wrongful acts" to prevent Plaintiff from filing suit, including
14 misrepresenting the material terms of the loan, knowing that Plaintiff would rely on those
15 misrepresentations; structuring the loan terms to change after expiration of the statute of
16 limitations; rushing Plaintiff through the signing of the loan; failing to highlight terms in the
17 loan documents which could or would drastically change the amount of her monthly payments;
18 failing to provide Plaintiff with a copy of the loan documents; forging Plaintiff's signature on
19 the loan application; and failing to ensure that the material terms of the loan were explained
20 to Plaintiff prior to their signing. (SAC ¶¶ 24(a)-(h).) In addition, Plaintiff alleges that
21 Countrywide delayed Plaintiff from pursuing her claim in court by failing to negotiate with
22 Plaintiff in good faith. (Id. ¶ 24(i).)
23       However, equitable estoppel "necessarily requires active conduct by a defendant, ***above***
24 ***and beyond the wrongdoing upon which the plaintiff's claim is filed***, to prevent the plaintiff
25 from suing in time." Santa Maria v. Pac. Bell, 202 F.3d 1170, 1177 (9th Cir. 2000) (emphasis
26 added). Oceanfront correctly points out that most of these allegations were advanced by
27 Plaintiff in her FAC, and were rejected by the court in granting Oceanfront's previous motion
28 to dismiss because they were "the same allegations upon which Plaintiff's underlying claims

1 . . . are based." (Doc. No. 46-1 p.8; Doc. No. 33 p.7.) Moreover, almost all of the new
2 allegations advanced by Plaintiff in support of her equitable estoppel theory suffer from the
3 same flaw. (See, e.g., SAC ¶ 24(a) ("Plaintiff is informed and believes that Oceanfront and/or
4 [Accredited] misrepresented the material terms of the LOAN and knew that Plaintiff would
5 rely on said misrepresentations.").) The only allegation which would seem to validly support
6 tolling based on equitable estoppel is Plaintiff's claim that Countrywide engaged in dilatory
7 tactics in order to prevent Plaintiff from filing suit. Plaintiff asserts three theories under which
8 Countrywide's actions may be attributable to Oceanfront: through the doctrine of *respondeat*
9 *superior*; because Oceanfront and Countrywide were "agents, employees and fiduciaries of
10 each other"; and because Oceanfront and Countrywide "pursued a common course of conduct,
11 acted in concert with, and conspired with each other" to commit the wrongs alleged. (Id. ¶¶ 11,
12 38-39.) However, these assertions are nothing more than bare legal conclusions, unsupported
13 by any facts contained in the SAC. Therefore, Plaintiff has failed to demonstrate that equitable
14 estoppel applies to toll the statute of limitations on any of these claims as to Oceanfront.

15 Plaintiff also argues that equitable tolling applies to her claims, because she "trusted
16 Oceanfront to provide her with loan terms which were beneficial," but the loan she was given
17 "was structured to deceive because the interest rate did not reset until after all of the statutes
18 of limitation had expired." (SAC ¶ 22.) Plaintiff further alleges that she "acted diligently in
19 discovering the claims alleged" in her SAC because she retained counsel, sent a written request
20 to Countrywide requesting information about her loan, and "sought information to negotiate
21 a resolution." Once again, these claims appear to be similar or identical to those advanced by
22 Plaintiff in support of equitable tolling in her FAC. (See FAC ¶¶ 21(a)-(b), 22(a)-(b), 24.)
23 Although Plaintiff argues that "the terms of the LOAN significantly changed after expiration
24 of the statute of limitations and thus Plaintiff would not have known of the problems prior to
25 the expiration of the limitations period" (Doc. No. 49 p.3), this argument is undermined by the
26 fact that most of the allegations in the SAC are based on events that would have come to
27 Plaintiff's notice before the statute of limitations on her claims had run. For example, Plaintiff
28 alleges that the loan proceeds she received on March 1, 2006 were less than half of what they

1  should have been, and Oceanfront and Accredited charged excessive loan origination fees.
2  (SAC ¶¶ 17(l) & 19(n).) Plaintiff also alleges that after she entered into the loan, she was
3  charged with payments higher than what Oceanfront and Accredited had represented they
4  would be, and that the loan was executed at a higher interest rate than she had agreed to. (Id.
5  ¶¶ 18(a)-(b), 28(c).) As this court has already noted, "equitable tolling only applies '[i]f a
6  reasonable plaintiff would not have known of the existence of a possible claim within the
7  limitations period.'" (Doc. No. 33 p.8 (quoting Santa Maria, 202 F.3d at 1178).) Because
8  Plaintiff was aware of these facts at the time or soon after the loan was executed, she should
9  have known of the existence of a potential claim long before any of the applicable statutes of
10 limitations had run out. Therefore, Plaintiff has also failed to demonstrate her entitlement to
11 equitable tolling.

12       Because Plaintiff's second, fifth, sixth, seventh, and eighth causes of action against
13 Oceanfront are time-barred by their respective statutes of limitations, Oceanfront's motion to
14 dismiss these claims is GRANTED. Further, because Plaintiff has failed to cure these
15 deficiencies in her claims despite repeated opportunities to amend her complaint, these claims
16 are dismissed without leave to amend.

17              **2)    Claim No. 9 (quasi-contract)**

18       As this court previously found, Plaintiff's claim for quasi-contract "is essentially one
19 for unjust enrichment." (Doc. No. 33 p.16 (citing Supervalu, Inc. v. Wexford Underwriting
20 Managers, Inc., 175 Cal. App. 4th 64, 78 (Cal. Ct. App. 2009)).) Although not raised by
21 Oceanfront, it should be noted that Plaintiff's unjust enrichment claim is also subject to a
22 three-year statute of limitations under CAL. CIV. PROC. CODE § 338(d), since it is grounded in
23 Oceanfront's allegedly fraudulent actions. See FDIC v. Dintino, 167 Cal. App. 4th 333, 347
24 (Cal. Ct. App. 2008). It appears from Plaintiff's SAC that Oceanfront's alleged unjust
25 enrichment arises from its receipt of commissions "paid by Plaintiff due to [Accredited's]
26 policies to pay higher commissions on loans which are less advantageous to borrowers." (SAC
27 ¶ 120.) Thus, Plaintiff's quasi-contract cause of action against Oceanfront would have accrued
28 at or around the time the loan was initially entered in to, as Oceanfront is not alleged to have

been involved (other than through the already-rejected *respondeat superior*, agency, and conspiracy theories) in any acts beyond brokering the loan agreement between Plaintiff and Accredited. Moreover, as discussed above, Plaintiff has not shown that tolling of the statute of limitations is warranted. Therefore, Plaintiff's ninth cause of action for quasi-contract against Oceanfront is time-barred, and Oceanfront's motion to dismiss this claim is GRANTED. Although this issue is raised for the first time here, any defects in the claim can only be cured by amending Plaintiff's equitable estoppel and equitable tolling allegations; as already noted above, Plaintiff has been given sufficient opportunity to do so, and has failed to adequately allege her entitlement to tolling of the applicable limitations periods. Therefore, this claim is also dismissed without leave to amend.

### 3) Claim No. 10 (determination of validity of lien)

Finally, Oceanfront argues that "[t]here is no basis for Plaintiff to include Oceanfront as a defendant" when seeking a declaration that the loan is unenforceable, because "Plaintiff does not allege that Oceanfront has asserted an adverse claim to the title on the Property." (Doc. No. 46-1 p.11.) Plaintiff responds by arguing that Oceanfront is properly named a defendant to this cause of action because "Oceanfront is an agent of other Defendants." (Doc. No. 49 p.16.) However, as discussed above, Plaintiff has failed to provide any support for an agency relationship between the defendants beyond making purely conclusory statements to that effect. Therefore, Oceanfront's motion to dismiss this claim is also GRANTED. Because Plaintiff has failed to properly plead an agency relationship in any of its previous complaints, this claim is dismissed without leave to amend.

### B. Countrywide

The first, third, fourth, fifth, ninth, and tenth causes of action in Plaintiff's SAC are brought against Defendant Countrywide. Countrywide moves to dismiss all but the first, for violation of RESPA, and fifth, for unfair competition. (Doc. No. 44.)

### 1) Claim No. 3 (FDCPA)

Countrywide moves to dismiss Plaintiff's claim against it for violation of the FDCPA, arguing that it does not qualify as a "debt collector" within the meaning of the statute. (Doc.

1  No. 44-1 pp. 4-6.) Under the FDCPA, a "debt collector" is defined as someone whose
2  "principal purpose . . . is the collection of any debts, or who regularly collects or attempts to
3  collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15
4  U.S.C. § 1692a(6). It is clear that the FDCPA does not apply to Countrywide to the extent that
5  Countrywide's actions were directed towards collecting payments on any debt held by the
6  company itself. See 15 U.S.C. § 1692a(6) ("The term ['debt collector'] does not include . . .
7  any officer or employee of a creditor while, in the name of the creditor, collecting debts for
8  such creditor . . . ."). This argument was the basis for the court's decision to grant
9  Countrywide's motion to dismiss Plaintiff's FDCPA claim from the FAC. (Doc. No. 33
10 pp. 9-10.)

11 In her SAC, however, Plaintiff has added a new allegation that, in contacting Plaintiff
12 and attempting to foreclose on her property, Countrywide was "attempting to collect money
13 from Plaintiff for an alleged note originated by [Accredited] and acquired by [Bank of New
14 York]." (SAC ¶ 67(c).) This would appear to put Countrywide squarely within the FDCPA's
15 definition of a "debt collector." Countrywide nevertheless asserts that there is "substantial
16 authority" to show that mortgage servicing agents are otherwise categorically excluded from
17 the FDCPA. (Doc. No. 44-1 p.5.) As evidence for this proposition, Countrywide cites to a Fifth
18 Circuit case, Perry v. Stewart Title Co., 756 F.2d 1197 (5th Cir. 1985). (Id.) However, Perry
19 is inapposite for two reasons: First, as a Fifth Circuit case, it is not controlling authority for this
20 court. Second, and more importantly, Countrywide appears to rely on a misreading of the Perry
21 Court's holding. In that case, the Fifth Circuit found that "[t]he legislative history of section
22 1692(a)(6) indicates conclusively that a debt collector does not include the consumer's
23 creditors, a mortgage servicing company, or an assignee of a debt, *as long as the debt was not*
24 *in default at the time it was assigned*." Perry, 756 F.2d at 1208 (emphasis added). The last
25 clause appears to be vital to the determination of whether any of these entities may be
26 considered "debt collectors" under the FDCPA—that is, the condition that the debt not be in
27 default at the time of assignment applies to creditors, mortgage servicing companies, and
28 assignees who wish to fall within this exclusion. Indeed, the Perry Court itself relied on this

fact in concluding that the FDCPA was not applicable to the defendant mortgage servicing company in that case, reasoning that the defendant "sold the [plaintiffs'] loan to [another company] approximately 1½ months after the closing ***and approximately 2 months before the [plaintiffs] were in default***." Id. (emphasis added). When the defendant subsequently continued servicing the loan for the company that purchased it, it acted as "a bona fide mortgage servicing company"—i.e., one that merely serviced a mortgage that had not yet been defaulted on-and was therefore exempt from the FDCPA's restrictions. Id. Thus, contrary to Countrywide's assertions, Perry did not establish a blanket rule excluding all mortgage servicing companies from the FDCPA.[2]

This reading of the Perry Court's holding is further bolstered by an examination of the legislative history the Court itself referred to. In a 1977 report on the Consumer Credit Protection Act (section 803 of which was later codified at 15 U.S.C. § 1692a), the Senate Committee on Banking, Housing, and Urban Affairs described the scope of the Act, stating that

> the committee does not intend the definition [of "debt collector"] to cover the activities of trust departments, escrow companies, or other bona fide fiduciaries; the collection of debts, such as mortgages and student loans, by persons who originated such loans; ***mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing***; and the collection of debts owed to a creditor when the collector is holding the receivable account as collateral for commercial credit extended to the creditor.

S. REP. NO. 95-382, at 3-4 (1977) (emphasis added). This language clearly tracks the four subdivisions of § 1692a(6)(F), which states:

> The term ["debt collector"] does not include—
>
> . . .
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; ***(iii) concerns a debt which was***

---

[2] The other case cited by Countrywide in support of its argument, Scott v. Wells Fargo Home Mortg. Inc., appears to rely on the same misreading of the holding in Perry as Countrywide does. 326 F. Supp. 2d 709, 717-18 (E.D. Va. 2003).

*not in default at the time it was obtained by such person;* or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

Thus, the Committee, in explicitly mentioning mortgage service companies in its report, was providing an example of the type of company that *might* qualify for an exemption under § 1692a(6)(F)(iii), *if* the mortgage being collected upon was not in default at the time the servicing company assumed responsibility for its collection. Plaintiff has not pled that her mortgage was not in default at the time Bank of New York allegedly retained Countrywide to collect on it; therefore, dismissal on this ground is appropriate.

Countrywide also argues that it qualifies for exclusion from the FDCPA under § 1682a(6)(F)(i), which exempts from the Act's provisions "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity [] is ***incidental to a bona fide fiduciary obligation*** . . . ." (Doc. No. 44-1 p.5.) Countrywide argues that, "[a]s agent of the beneficiary, a mortgage servicing company is a fiduciary of the beneficiary," and that "[d]ebt collection by the mortgage servicing agent is incidental to the agent's fiduciary obligations under the servicing agreement." (Id.)

The Ninth Circuit recently held that "[t]wo requirements must be satisfied for an entity to come within the exception to the FDCPA for collection activities 'incidental to a bona fide fiduciary obligation.' First, the entity must have a 'fiduciary obligation.' Second, the entity's collection activity must be 'incidental to' its 'fiduciary obligation.'" Rowe v. Educ. Credit Mgmt. Corp., 559 F.3d 1028, 1032 (9th Cir. 2009) (internal citations omitted). In this case, the court may conclude that Countrywide does not qualify for this exception without reaching the issue of whether Countrywide was a fiduciary of Bank of New York, because Countrywide's collection activities on Plaintiff's mortgage were clearly not "incidental to" whatever obligation it owed to the ultimate holder of the debt. "The 'incidental to' requirement means that the collection activity must not be 'central to' the fiduciary relationship. The function of this requirement is to exclude fiduciaries whose ***sole or primary function*** is to collect a debt on behalf of the entity to whom the fiduciary obligation is owed." Id. at 1034 (emphasis added) (internal citations omitted). Here, it appears from the SAC that Countrywide's relationship

with Bank of New York arose solely from its obligation to collect payments from Plaintiff on Bank of New York's behalf; moreover, Countrywide has alleged no facts to dispute this notion. Therefore, any collection activities undertaken by Countrywide would not have been "incidental to" its relationship with Bank of New York, and the fiduciary exception to the FDCPA does not apply.

Finally, Countrywide claims that Plaintiff has "fail[ed] to allege any specific facts to support this [FDCPA] cause of action," relying only on "bare legal conclusions" to make out her claim. (Doc. No. 44-1 p.6.) However, this statement is incorrect. At a minimum, Plaintiff has alleged that Countrywide instituted foreclosure proceedings and served Plaintiff with a Notice to Quit without any intention of actually foreclosing on Plaintiff, as a tactic to pressure her to make her payments. (SAC ¶ 67(b).) This appears to be a violation of the FDCPA under 15 U.S.C. § 1692e(4), which prohibits "[t]he representation or implication that nonpayment of any debt will result in . . . sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action."

Because Plaintiff has failed to plead facts sufficient to show that Countrywide is a "debt collector" under the FDCPA, the court GRANTS Countrywide's motion and dismisses this claim. However, because this dismissal is based on an interpretation of the FDCPA's definitional provisions that is raised here for the first time, the court grants Plaintiff leave to amend as to this cause of action.

**2)     Claim No. 4 (Rosenthal Act)**

Countrywide also argues that foreclosures do not constitute "debt collection" within the meaning of the Rosenthal Act. (Doc. No. 44-1 p.6.) It cites to several district court cases in support of this proposition. (Id. at pp. 6-7.) In response, Plaintiff cites to several other district court cases purported to hold to the contrary. (Doc. No. 48 p.5.) However, neither party has referenced any controlling authority to justify their position.

Plaintiff's Rosenthal Act claim appears to be premised on three separate acts allegedly committed by Countrywide: (1) that Countrywide "failed to report the LOAN as disputed to credit reporting agencies after receipt of Plaintiff's QWR" (SAC ¶ 71); (2) that Countrywide

1  "contacted Plaintiff by phone and through letters seeking payment of money on a debt that is
2  not lawfully collectable" (id. ¶ 73(a)); and (3) that Countrywide "authorized the foreclosure
3  and the subsequent Notice to Quit . . . when in fact it did not intend to cause Plaintiff to give
4  up possession" (id. ¶ 73(b)). As previously found by this court, the first act—failing to report
5  a loan dispute to credit reporting agencies—does not state a violation of the Rosenthal Act.
6  (See Doc. No. 33 p.10.) In addition, the second act also does not appear to describe a violation
7  of the Rosenthal Act—notably, Plaintiff does not allege that Countrywide's communications
8  were harassing, threatening, or profane, see CAL. CIV. CODE §§ 1788.10-1788.11, or that they
9  contained misrepresentations of a nature expressly prohibited by the Act, see id. § 1788.13.
10 However, the third act does appear to state a valid claim for relief. Specifically, CAL. CIV.
11 CODE § 1788.10(e) prohibits debt collectors from "collect[ing] or attempt[ing] to collect a
12 consumer debt by means of . . . [t]he threat to any person that nonpayment of the consumer
13 debt may result in the . . . attachment or sale of any property . . . of the debtor, ***unless such***
14 ***action is in fact contemplated by the debt collector and permitted by the law***." (Emphasis
15 added.) Here, Plaintiff has alleged that Countrywide had neither the authority to legally
16 foreclose upon her property, nor did it intend to actually do so, in violation of CAL. CIV. CODE
17 § 1788.10(e). Furthermore, because such a threat does not constitute an actual foreclosure, it
18 is unnecessary to decide whether the act of foreclosing itself qualifies as "debt collection," as
19 disputed by the parties. Cf. Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d
20 1029, 1054 (E.D. Cal. 2009) (finding that plaintiff failed to state a claim under the Rosenthal
21 Act because "[a]lthough plaintiff's claim is formally based on the 'threat' to foreclose rather
22 than foreclosure itself . . . the Act does not prohibit a creditor from ***honestly representing that***
23 ***he can and will foreclose***" (emphasis added) (internal footnotes omitted)).

24       Therefore, Plaintiff has met the minimal standards for pleading a claim under the
25 Rosenthal Act at this stage, and Countrywide's motion to dismiss this cause of action is
26 DENIED.
27 //
28 //

### 3) Claim No. 9 (quasi-contract)

As noted above, a quasi-contract claim is synonymous with a claim for unjust enrichment. Under California law, "[t]he elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'" Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583, 1593 (Cal. Ct. App. 2008) (quoting Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (Cal. Ct. App. 2000)).

Countrywide argues that Plaintiff's cause of action for quasi-contract is without merit because she has "fail[ed] to state any claim for wrongful conduct resulting in Countrywide's unjust enrichment." (Doc. No. 44-1 pp. 7-8.) However, a finding of wrongdoing by the defendant is not necessary in order for a plaintiff to prevail on a claim for unjust enrichment. Lectrodryer, 77 Cal. App. 4th at 727 n.2 (citing Frank v. Tavares, 142 Cal. App. 2d 683, 688 (Cal. Ct. App. 1956)). Plaintiff has alleged that she made payments to Countrywide, portions of which Countrywide retained in the form of "commissions, rebates, portions of payment streams, fees, [or] charges." (SAC ¶ 117.) Plaintiff further alleges that permitting Countrywide to keep the payments it received would be unjust because the loan was defective in its origination. (Id. ¶¶ 117-119, 121.) This appears sufficient to satisfy the two basic requirements for pleading an unjust enrichment claim under California law.

However, Plaintiff has also stated that she made these payments to Countrywide "under the mistaken belief that Plaintiff was under a duty to do so," but has nowhere alleged that Countrywide was aware that the underlying loan was defective and therefore not lawfully collectable. (Id. ¶ 122.) Under California law,

> [a]s a general rule, equitable concepts of unjust enrichment dictate that when a payment is made based upon a ***mistake of fact***, the payor is entitled to restitution. . . . Restitution will be denied, however, if the mistaken payment is made to a bona fide creditor of a third person—a creditor without fault because it made no misrepresentations to the payor and because it had no notice of the payor's mistake at the time payment was made. Stated plainly, ***if it's your mistake, you get to pay for it—unless the recipient misled you or accepted the payment knowing you didn't owe it.***

City of Hope Nat'l Med. Ctr. v. Superior Court, 8 Cal. App. 4th 633, 636-37 (Cal. Ct. App. 1992) (citing RESTATEMENT (FIRST) OF RESTITUTION § 14(1) (1937) and Holmes v. Steele, Cal.

1  App. 2d 675, 678-79 (Cal. Ct. App. 1969)) (emphasis added) (internal citations omitted). Thus,
2  it appears that under the facts as alleged, Plaintiff would not be entitled to restitution from
3  Countrywide. Therefore, the court GRANTS Countrywide's motion to dismiss this claim.
4  Because this issue is raised here for the first time, the court also grants leave to amend as to
5  this claim.

6   **4)   Claim No. 10 (determination of validity of lien)**

7  Finally, Countrywide objects to Plaintiff's claim seeking a declaration that the lien is
8  invalid and any security interest in her property is unenforceable. (Doc. No. 44-1 p.8.) In
9  support of its argument, Countrywide cites to an unpublished district court case, in which the
10 court dismissed an identical claim. (Id. (citing Delino v. Platinum Cmty. Bank, No.
11 09-CV-288-H-AJB, 2009 WL 2366513 (S.D. Cal. July 30, 2009).) In response, Plaintiff
12 appears to simply reassert the basis of her claim as already set forth in the SAC. (Doc. No. 48
13 pp. 7-8 ("Here, Plaintiff alleges that because of the defective documentation, false
14 representations and /or fraud that induced Plaintiff to enter into the LOAN, Defendants have
15 forfeited any and all interest in the Subject Property because of Defendants [*sic*] wrongful acts
16 alleged in the SAC.").)

17 Plaintiff's grounds for invalidating the lien are the alleged defects in the loan origination
18 process. As discussed above, these allegedly wrongful acts were undertaken by Defendants
19 Oceanfront and Accredited, and cannot be imputed to Countrywide under any of Plaintiff's
20 theories of joint liability. Moreover, Plaintiff's causes of action against Oceanfront with regard
21 to these acts are all time-barred. To permit Plaintiff to nonetheless assert a cause of action to
22 declare the lien invalid based on those acts would be to allow an end-run around the statutes
23 of limitations. Therefore, the court also GRANTS Countrywide's motion to dismiss this claim.
24 For the same reasons that no leave to amend was granted for Plaintiff's time-barred claims
25 against Oceanfront, no leave to amend is granted here.

26 **IV.   CONCLUSION**

27 For the foregoing reasons, the court hereby orders the following:

28

1    (1)    Oceanfront's motion to dismiss (Doc. No. 46) is GRANTED, and all claims against Oceanfront are dismissed without leave to amend. The Clerk of the Court is directed to terminate Oceanfront from the case.

(2)    Countrywide's motion to dismiss (Doc. No. 44) is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's third and ninth claims against Countrywide for violation of the FDCPA and quasi-contract are dismissed with leave to amend, and Plaintiff's tenth claim against Countrywide for determination of validity of lien is dismissed without leave to amend. Dismissal is denied as to Plaintiff's fourth claim for violation of the Rosenthal Act.

(3)    If Plaintiff wishes to file an amended complaint, she must do so by **April 8, 2011**.

**IT IS SO ORDERED.**

DATED: March 25, 2011

_____
Hon. Jeffrey T. Miller
United States District Judge