# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA FRISON,<br><br>  Plaintiff,<br><br>v.<br><br>ACCREDITED HOME LENDERS, INC.; OCEANFRONT MORTGAGE, INC.; COUNTRYWIDE HOME LOANS, INC.; FIDELITY NATIONAL TITLE COMPANY; THE BANK OF NEW YORK in trust for registered Holders of CWABS, Inc. Asset-Backed Certificates, Series 2006-BC5; all other claimants of whatsoever kind and character against real property commonly known as 435 Ringwood Drive, San Diego, CA, APN 583-704-04-00; and DOES 1 through 100, inclusive,<br><br>  Defendants. | CASE NO. 10-CV-777-JM (WVG)<br><br>**ORDER GRANTING DEFENDANT THE BANK OF NEW YORK MELLON'S MOTION TO DISMISS**<br><br>Doc. No. 61 |

Plaintiff Viola Frison brings the current action based on a loan obtained through a refinancing of her home and the subsequent foreclosure proceeding initiated against it. Plaintiff's Second Amended Complaint ("SAC") asserts ten causes of action: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*; (2) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*; (3) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*; (4) violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), CAL. CIV. CODE §§ 1788 *et seq.*;

(5) violation of California's unfair competition law, CAL. BUS. & PROF. CODE § 17200 ("§ 17200"); (6) breach of fiduciary duty; (7) negligent misrepresentation; (8) fraud; (9) quasi-contract; and (10) a determination invalidating the lien. (Doc. No. 43.) Defendant The Bank of New York Mellon[1] ("BNYM") now brings a motion to dismiss the claims against it. (Doc. No. 61.)

Pursuant to CivLR 7.1(d)(1), the court determines this matter is appropriate for resolution without oral argument. For the reasons set forth below, the court GRANTS BNYM's motion to dismiss.

## I. BACKGROUND

Plaintiff is an individual and the alleged owner of a parcel of real property located at 435 Ringwood Drive, San Diego, CA. (SAC ¶ 1.) Plaintiff claims that on or around February 24, 2006, she applied for and obtained a loan secured by her real property "[a]t the request of" Defendants Accredited Home Lenders, Inc. ("Accredited"), Oceanfront Mortgage, Inc. ("Oceanfront"), "and others." (Id. ¶ 16.) Although the SAC does not specify the role that each defendant played in the transaction, Oceanfront presumably acted as broker in helping Plaintiff obtain the loan from Accredited. (Id. ¶ 2-3.) Defendants Countrywide Home Loans, Inc. ("Countrywide") and BNYM appear to have subsequently acquired interests in the loan and/or taken over its servicing.[2] (Id. ¶¶ 4 & 34.)

According to the SAC, Oceanfront and Accredited made "certain representations regarding the LOAN" to Plaintiff that were inaccurate, including statements regarding the favorability of the loan terms generally, Plaintiff's ability to subsequently refinance the loan to reduce monthly payments, the size of the interest rate and required payments on the loan, the amount of equity in Plaintiff's property, the amount of money available to Plaintiff, the adjustability of the interest rate, and the absence of a balloon payment. (Id. ¶¶ 17-18.) As a

---

[1] Erroneously sued as "The Bank of New York in Trust for Registered Holders of CWABS, Inc. Asset-Backed Certificates, Series 2006-BC5."

[2] An additional defendant, Fidelity National Title Company ("Fidelity"), was voluntarily dismissed from the case without prejudice by Plaintiff. (Doc. No. 47.) Fidelity's role in this case is not clear from the complaint, which merely alleges that Fidelity "perform[ed] certain tasks related to origination of the LOAN." (SAC ¶ 41)

1 result of these representations, Plaintiff was "convinced" by Oceanfront and Accredited to
2 refinance her property. (Id. ¶ 17(d).) According to Plaintiff, the loan documents she was
3 provided with were "complicated and misleading to the average consumer," and their material
4 terms were not explained to her prior to signing. (Id. ¶¶ 24(e) & (h).) Nevertheless, Plaintiff
5 signed the loan documents because she was "rushed through" the process and not given time
6 to properly read and review the papers before agreeing to their terms. (Id. ¶ 24(d).)

7 Plaintiff claims that the loan proceeds she received afterwards were less than the
8 amount she was promised (id. ¶ 17(l)) and that her payments on the mortgage were higher than
9 Oceanfront and Accredited had told her they would be (id. ¶ 18(b)). Plaintiff also claims that
10 Oceanfront and Accredited failed to disclose key information to her prior to or at the close of
11 the transaction (id. ¶ 19) and did not provide her with copies of the loan documents she signed
12 (id. ¶ 24(f)). In addition, Plaintiff alleges that her initials and signature on the loan application
13 were forged. (Id. ¶ 17(f)-(k).)

14 After Plaintiff obtained the financing, the loan "subsequently became unaffordable" and
15 foreclosure proceedings were initiated against her. (Id. ¶¶ 18(g), 27(b).) Plaintiff received a
16 Notice to Quit the property on January 23, 2009; however that foreclosure was subsequently
17 halted. (Id. ¶¶ 27(b), 78(d).) According to Plaintiff, following this attempted foreclosure, she
18 submitted a written request for information regarding her loan to Countrywide on or around
19 April 3, 2009. (Id. ¶ 46.) Plaintiff did not receive a response to her request. (Id. ¶ 51.)

20 Plaintiff filed her original complaint in state court on March 2, 2010. (Doc. No. 1.)
21 Defendant Countrywide subsequently removed the action to federal court, citing federal
22 question jurisdiction. (Id.) Following several rounds of motions to dismiss by Defendants
23 Countrywide and Oceanfront, Plaintiff filed her SAC on November 12, 2010, adding BNYM
24 as a defendant for the first time. (Doc. Nos. 8-9, 18, 24-25 & 33; SAC.) Countrywide and
25 Oceanfront again filed motions to dismiss the SAC. (Doc. Nos. 44 & 46.) The court granted
26 Oceanfront's motion, and granted in part and denied in part Countrywide's motion. (Doc.
27 No. 56.) Although leave to amend was granted, no additional amended complaint was filed.
28

BNYM now brings a motion to dismiss the claims against it as set forth in the SAC, which Plaintiff opposes. (Doc. Nos. 61 & 64.)

## II. LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) challenges the legal sufficiency of the pleadings. De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978). In evaluating the motion, the court must construe the pleadings in the light most favorable to the non-moving party, accepting as true all material allegations in the complaint and any reasonable inferences drawn therefrom. See, e.g., Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003). While Rule 12(b)(6) dismissal is proper only in "extraordinary" cases, United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The court should grant 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

## III. DISCUSSION

Plaintiff's SAC states four causes of action against BNYM, including violation of the Truth in Lending Act, unfair competition, quasi-contract, and determination of the validity of the lien.

### A. TILA Violation

The TILA cause of action in the SAC appears to be premised upon Plaintiff's allegations regarding Accredited and Oceanfront's failure to provide certain required disclosures at or before the time Plaintiff entered into the loan agreement. (See SAC ¶¶ 58-60.) Plaintiff's claim against BNYM is based on the theory that BNYM knew of these TILA violations when it acquired an interest in Plaintiff's loan, and is therefore liable under TILA as Accredited's assignee.[3] (Id. ¶ 61.)

---

[3] To the extent that Plaintiff may also be attempting to hold BNYM accountable under the *respondeat superior,* agency, and/or conspiracy theories of liability set forth in the SAC (SAC ¶¶ 11 & 38-39), those theories were deemed inadequately pled in this court's previous order. (See Doc. No. 56 p.6.)

1    As BNYM correctly points out, the violations alleged to have occurred at the time the loan was executed are all time-barred under TILA's one-year statute of limitations. See 15 U.S.C. § 1640(e). Furthermore, this court has already found that, under the facts as pled in the SAC, neither equitable estoppel nor equitable tolling is applicable to extend the limitations period. (Doc. No. 56 pp.5-7.) Therefore, the TILA cause of action against BNYM should be dismissed.

Plaintiff argues that, once BNYM acquired rights to the loan, it was under an ongoing obligation to provide Plaintiff with updated information correcting the TILA disclosure errors committed by Accredited and Oceanfront. (Doc. No. 64 p.4.) However, this argument is insufficient to overcome BNYM's motion to dismiss for two reasons. First, this theory of liability does not appear in the SAC itself; rather, it appears to have been raised in Plaintiff's opposition for the first time. However, a Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint itself, and allegations made outside of the complaint may not be considered. See Lee v. City of L.A., 250 F.3d 1273, 1274 (9th Cir. 1993). Second, the TILA regulation cited by Plaintiff is inapplicable to the facts as pled in the SAC. In her opposition to BNYM's motion, Plaintiff quotes 12 C.F.R. § 226.19(a)(2)(ii), which states: "If the annual percentage rate disclosed under paragraph (a)(1)(i) of this section [requiring certain disclosures by the creditor at the time of the loan application] ***becomes inaccurate*** . . . the creditor shall provide corrected disclosures with all changed terms." (Emphasis added.) Plaintiff interprets this provision as imposing a duty on BNYM to retroactively correct unmade or inaccurate disclosures by the originating lender. However, the plain language of the regulation indicates that this obligation to disclose only arises when *changes* in the annual percentage rate ("APR") occur. Here, there is no indication from either the SAC or Plaintiff's opposition that the APR changed during the period of repayment. Indeed, the SAC makes clear that Plaintiff's TILA claim is based on misrepresentations regarding the actual level of the original APR. (See, e.g., SAC ¶¶ 19(k)-(m).) Thus, the statute of limitations began to run as soon as Plaintiff knew or should have known of Accredited and Oceanfront's alleged failure to disclose the true APR, which would have occurred immediately after the loan was executed at the time she began

making payments. To restart the statute of limitations every time the interest in a loan changes hands would render that limitations period meaningless.

Plaintiff's objections are therefore unavailing, and the TILA cause of action is dismissed against Defendant BNYM.

### B.    Unfair Competition

Like the TILA claim, Plaintiff's unfair competition claim against BNYM is based on the allegation that BNYM purchased its interest in the loan despite knowing of the legal irregularities involved in its origination.[4] (SAC ¶¶ 77(h)-(i).)

As a threshold matter, BNYM challenges Plaintiff's standing to bring a cause of action against it under California's unfair competition law ("UCL"), CAL. BUS. & PROF. CODE § 17200 *et seq*. (Doc. No. 61-1 pp. 5-6.) As BNYM correctly states, a UCL claim may only be brought by a private citizen "who has suffered injury in fact and has lost money or property as a result of the unfair competition." CAL. BUS. & PROF. CODE § 17204. BNYM now claims that Plaintiff has failed to allege either a loss of money or property or a causal connection between BNYM's alleged conduct and the harm she suffered sufficient to support a § 17200 cause of action. (Doc. No. 61-1 p.6.)

The fundamental wrong that is the basis of Plaintiff's UCL claim relates to certain alleged misrepresentations and failures to disclose material information on the part of Accredited and Oceanfront at the time the loan agreement was entered into. Plaintiff has alleged that, as a result of Accredited and Oceanfront's acts, she was forced, *inter alia*, to make higher payments on the loan than she otherwise would have and to pay excessive fees. (See SAC ¶ 18(b) & 19(n).) These losses are sufficient to constitute "loss of money" for the purpose of establishing standing under § 17200.

However, the alleged perpetrators of these wrongful acts were Accredited and Oceanfront, not BNYM. As BNYM points out, liability under the UCL "must be predicated

---

[4] In her opposition, Plaintiff also argues for the first time that BNYM is liable under § 17200 for its "fail[ure] to properly supervise [Countrywide's] actions" as servicer of the loan. As discussed above, a theory of liability that is not part of the complaint itself cannot be taken into consideration when deciding a motion to dismiss.

on [the defendant's] *personal participation* in the unlawful practices," and not some form of vicarious liability. People v. Toomey, 157 Cal. App. 3d 1, 14 (Cal. Ct. App. 1984) (emphasis added). A defendant may "participate" in the unlawful competition "either directly or by aiding and abetting the principal." Id. at 15. Here, Plaintiff has failed to allege any facts that would support a theory that BNYM was involved, either directly or indirectly, in Accredited and Oceanfront's acts at the time the loan agreement was executed. Thus, there is no apparent causal connection between BNYM's allegedly unlawful act of purchasing the loan, and the harm suffered by Plaintiff in being bound by the terms of the agreement she made with Accredited and Oceanfront. See also Daro v. Superior Court, 151 Cal. App. 4th 1079, 1099 (Cal. Ct. App. 2007) ("[T]here must be a causal connection between the harm suffered and the unlawful business activity. That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law.").

Therefore, Plaintiff has failed to allege facts demonstrating her standing to bring a UCL claim against BNYM, and this claim is also dismissed.

**C. Quasi-Contract**

Plaintiff's quasi-contract cause of action against BNYM is once again based upon BNYM's purchase of the loan despite knowing of the legal violations committed by Accredited and Oceanfront during the origination process. (SAC ¶ 116.)

This court previously found that Plaintiff's claim for quasi-contract "is essentially one for unjust enrichment." (Doc. No. 33 p.16 (citing Supervalu, Inc. v. Wexford Underwriting Managers, Inc., 175 Cal. App. 4th 64, 78 (Cal. Ct. App. 2009).) "Unjust enrichment is not a cause of action, just a restitution claim." Hill v. Roll Int'l Corp., No. A128698, 2011 WL 2041574 at *7 (Cal. Ct. App. May 26, 2011). However, there is no basis for relief on this type of claim where there is "no underlying actionable wrong." Id.

Here, Plaintiff has failed to state a valid claim of wrongful conduct by BNYM that has resulted in BNYM's unjust enrichment. (See supra Parts III.A & B; infra Part III.D.) Because all other claims against BNYM are dismissed, Plaintiff's claim for unjust enrichment is also dismissed as to Defendant BNYM.

### D. Determination of Validity of Lien

Finally, Plaintiff seeks a declaration from the court that the lien on her home is void *ab initio* based on the alleged defects in the loan origination process. (SAC ¶¶ 126-127.) However, as discussed above, Plaintiff has failed to allege any wrongdoing on the part of BNYM, nor can the allegedly wrongful acts undertaken by Accredited and Oceanfront be attributed to BNYM under any of the theories raised in the SAC. Therefore, no declaration against BNYM can be entered, and this claim is also dismissed.

## IV. CONCLUSION

For the reasons set forth above, the court hereby GRANTS BNYM's motion and dismisses all four claims against it with leave to amend. If she wishes to do so, Plaintiff must file an amended complaint by **July 25, 2011**. However, because Plaintiff has already foregone the opportunity to amend the SAC following the partially successful motions to dismiss by Defendants Oceanfront and Countrywide, any changes made in a subsequently filed amended complaint must be strictly limited to BNYM-specific allegations only. Alterations to any of Plaintiff's allegations against any other defendants will be stricken from the amended complaint.

**IT IS SO ORDERED.**

DATED: July 13, 2011

_____
Hon. Jeffrey T. Miller
United States District Judge